# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 12, 2014

## BROOKE LEE WHITAKER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 17464      Robert G. Crigler, Judge**

---

**No. M2013-00919-CCA-R3-PC   Filed 06/04/2014**

---

The petitioner, Brooke Lee Whitaker, pleaded guilty to rape and received a twelve-year sentence. In her petition for post-conviction relief she alleges that she received ineffective assistance of counsel, that her guilty plea was not knowingly and voluntarily entered, and that trial counsel had a conflict of interest as the former sheriff of Bedford County that prejudiced his representation of the petitioner. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Andrew J. Hazley, Jr., Murfreesboro, Tennessee, for the appellant, Brooke Lee Whitaker.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was originally indicted for rape, a Class B felony. After the petitioner rejected an offer to plead guilty to rape in exchange for an eight-year sentence, the State superseded the indictment to charge the petitioner with aggravated rape, a Class A felony. She ultimately entered an open best interest plea to one count of rape, a Class B felony, with the trial court to determine the length of her sentence at a sentencing hearing. The trial court sentenced the defendant to serve twelve years as a Range I offender. The petitioner appealed, and this court affirmed the sentence. *State v. Brooke Lee Whitaker*, No. M2009–02449–CCA–R3–CD, 2011 WL 2176511, at \*1 (Tenn. Crim. App. May 31, 2011)

*perm. app. denied* (Tenn. Sept. 21, 2011).

At the guilty plea hearing, the petitioner stated that she read and understood her petition to enter a plea of guilty[1] and that she understood that entering a best interest plea had the same effect as a guilty plea. As factual support for the guilty plea, the State offered evidence that in August 2008, the petitioner was housed in the same cell as the victim and four other women. On the evening of August 20, 2008, the petitioner and another inmate approached the victim after the lights were shut off and the cell door was locked. The women held the victim down and penetrated her vagina digitally. They also performed oral sex on the victim. The petitioner shouted for other inmates to help hold the victim down, and two additional inmates proceeded to assist in holding down the victim while the sexual assault continued. The victim reported the assault to authorities the next day. A detective from the Bedford County Sheriff's Department conducted an investigation and obtained statements from nearly every inmate in the cell.

At the conclusion of the State's proof, the petitioner stated that her plea to the amended charge of rape was "best interest." The trial court then clarified, "[P]lea of guilty; is that correct? Not trying to put words in your mouth. I understand it is a best interest plea. It is still a guilty plea. Is that what you want to do?" The petitioner responded that it was, and she agreed that she made this decision freely and voluntarily and that she was neither promised anything other than the agreement announced in open court nor was she threatened in any way. The petitioner further confirmed that she did not have any complaints with trial counsel's representation and that there was nothing further he could have done to research or investigate her case that he had not already done. After finding that the petitioner entered her plea freely, voluntarily, and understandingly, the trial court accepted the best interest plea.

At the sentencing hearing, the State and the petitioner agreed that she was a Range I offender because at the time of the offense she did not have any convictions that would classify her as a Range II offender. The only statement made by trial counsel at the hearing was that the medical proof and record did not show any physical injury. The trial court found that enhancement factor number one, the petitioner's prior criminal history, alone justified an enhancement of her sentence because the "Prior Record" section of the pre-sentence report began at the bottom of page five, filled pages six through twelve, and had two entries at the top of page thirteen. The court also found that the enhancement factor thirteen, committing an offense while incarcerated for a felony charge, and enhancement factor number eight, failure to comply with conditions of a sentence involving release into the

---

[1]Based on the petitioner's complaint, we note that the trial court noted that "best interest" was written above "plea of guilty."

community prior to trial or sentencing, applied because the offense was committed while the petitioner was incarcerated on a felony charge and the petitioner's probation had been revoked seven times. The trial court sentenced the petitioner to serve twelve years with one hundred percent release eligibility, the maximum sentence for a Range I offender convicted of a Class B felony.

At the post-conviction hearing, the court heard testimony from both the petitioner and trial counsel. The petitioner testified that while she pleaded guilty to rape, she felt that throughout her case trial counsel "did everything he could to get evidence against me, but not evidence to help me with my case." The petitioner contended that trial counsel communicated with her very infrequently, writing only two letters and discussing the case only "five minutes" before she entered the courtroom. The petitioner stated that she did call trial counsel and spoke with him on several occasions but that she did not receive any copies of discovery until three days prior to her trial. She testified that when she attempted to discuss her case, trial counsel would respond, "[o]h, everything is okay. Nothing has changed. I did this and I have done that[.]" She claimed that he made these statements "to blow me off, tell me -- it's like pacify me. Give me whatever I need to be told to shut up . . . ." The petitioner contended that trial counsel failed to arrange interviews with the witnesses the petitioner suggested, such as other women in her cell block and the supervising officer on the night of the offense.

The petitioner was initially charged with rape and offered an eight-year plea agreement by the State, with the condition that if she rejected the offer the State would supersede the indictment to include aggravated rape. However, she testified that she was unaware that her potential sentence would increase if she rejected the offer. After the petitioner refused the agreement, the State superseded the indictment and charged the petitioner with aggravated rape. On the eve of trial, the State offered to let the petitioner enter a best interest plea to the amended charge of rape, with the trial court to impose sentencing. The petitioner stated that trial counsel urged her to plead *nolo contendere* to the charge of rape and that he informed her that *nolo contendere* meant best interest. She stated that she later found out *nolo contendere* meant "no contest," and was a plea where "I don't have anything to say whether I did or didn't do it."

She testified that trial counsel told her that she needed to enter a best interest plea because she would be a multiple offender and would "get 25 years at 100 percent." She believed that information was incorrect; she believed she would have only been sentenced as a standard offender and would not have received a twenty-five year sentence. She stated that trial counsel "kept telling me, '[n]o, do not go to trial because you can face 25 years at 100 percent.'" The petitioner contends that trial counsel misinformed her about the sentence she was facing and that, because she was not a multiple offender, she would have faced a

-3-

twelve-year, rather than a twenty-five year sentence on the charge of aggravated rape.

She told trial counsel that she "didn't feel comfortable taking a plea to a rape charge, especially if I didn't commit it." The petitioner testified that trial counsel failed to conduct an investigation after she informed him that the medical reports "clearly state that the girl wasn't raped." She contended that DNA testing should have been conducted on a toothbrush holder to determine if it was used to penetrate the victim, and she believed trial counsel did not do so because "anything to the investigation was of no concern to him."

She stated that three days before trial, she asked trial counsel if she could plead to the original eight-year sentence that the State offered. Trial counsel responded "[w]ell, no, they are not going to do that. They are not going to do that." The petitioner testified that trial counsel never asked the judge if he would be willing to consider the eight-year sentence and that she pleaded guilty because her "back was against the wall." She stated that she felt like trial counsel was "letting [the State] railroad me. It's, if you don't want to take the 8, then we are going to charge you with this, instead of, 'We'll go ahead to trial on the rape charge.'" She further testified that while trial counsel "kept telling her" not to go to trial because she could face twenty-five years at one hundred percent, "I wasn't a multiple offender, so I wouldn't have been facing 25 years. . . . Therefore, I was misinformed. Had I been informed correctly, 12 years was all I was facing, I would have jeopardized 12 years because that is what I got anyway, was the max."

The petitioner also testified that trial counsel was previously the sheriff of Bedford County before becoming an attorney. She stated that she had "been getting in trouble since [she] was 11 years old" and that it was a conflict of interest to appoint an individual to represent her "who was the sheriff the whole time I have been getting in trouble." She testified that trial counsel was incapable of representing her because he already had his "mind made up" that the petitioner was "trouble," based on his opinion of her character and personality. While trial counsel did not specifically say that the petitioner was a troubled person, the petitioner indicated that he implied this sentiment because he continued to bring up her criminal background. She testified that if trial counsel had fully informed her of the sentence she faced that she would not have taken the plea agreement but instead would have proceeded to trial. She stated that she did not want to plead guilty to something she did not do and that the medical reports clearly exonerated her but that trial counsel repeatedly said "[y]eah, but the medical reports aren't really all that important."

On cross-examination, the petitioner admitted that trial counsel had visited her in jail one time. She agreed that there were only six people in her cell the night of the offense, including the victim, and four of them were initially charged with rape. She also confirmed that trial counsel informed her that the one cell mate who was not charged, Ms. Kimberly

-4-

O'Neal, was going to testify against her and that "what she had to say was not good and was probably going to get [the petitioner] convicted." She agreed that trial counsel also informed her that two of her co-defendants were going to testify against her and that they also would offer testimony harmful to the petitioner. She further confirmed that if the victim had taken the stand at trial, trial counsel would have been permitted to question her about her conviction for filing a false report.

The petitioner testified that Becky Stringer, the officer who was on duty the night of the offense, asked her why she agreed to the plea and that Ms. Stringer stated that she would have been the petitioner's best witness. The petitioner claimed that Ms. Stringer told her she would have been a good witness because "I did my rounds every 30 minutes and everything was normal. [The victim] was asleep in the bed." She stated that while she did not inform trial counsel of the potential exculpatory testimony, trial counsel would have been aware of the testimony had he spoken to the officer as the petitioner requested. The petitioner did not call this officer to testify at the post-conviction hearing.

Trial counsel testified that he was the sheriff of Bedford County for twelve years before he became a licensed attorney. He was appointed to represent the petitioner after her first attorney was forced to withdraw from representation due to a conflict of interest. There were four defendants in this case, and all four were initially charged with rape. Trial counsel frequently met with the co-defendants' attorneys to discuss the case. He stated that the co-defendants had a united front until two or three days before the trial was scheduled. Trial counsel confirmed that he received a letter with the State's plea offer for eight years as to the initial rape charge and that the offer included the condition that if the offer were rejected, the State would seek a superseding indictment on aggravated rape.

Trial counsel spoke several times with the detective investigating the case, who was a former employee of his. He stated that he had no reason to believe that she would answer his questions untruthfully. She provided him with a list of individuals who were actually in the cell at the time of the offense, and trial counsel spoke to several of these individuals, including Ms. Kimberly O'Neal. Trial counsel determined that Ms. O'Neal's testimony "would have been pretty severe," as it would implicate the petitioner and one other defendant as the main perpetrators of the rape. Trial counsel informed the petitioner of the nature of Ms. O'Neal's testimony and that the testimony would likely result in the petitioner's conviction. After speaking with Ms. O'Neal, trial counsel "spent two or three days there pretty much back and forth to the jail, speaking with our clients several times."

Only days before the trial was scheduled to begin, trial counsel learned that two of the co-defendants were planning to testify on behalf of the State. The counsel for the co-defendants did not convey to trial counsel what the substance of their clients' testimony

would be, but trial counsel "assumed it was going to be bad."  Trial counsel had obtained written or recorded statements of all the alleged participants at the preliminary hearing and was able to formulate an idea of what the testimony of the women would be.  He asked the petitioner whether she ever made any statements to law enforcement, and the petitioner informed him that she had not been Mirandized and had not made any statements at all to law enforcement.  However, when he viewed the tape of the petitioner's statements he realized that she was Mirandized and had made "six or eight" statements that trial counsel considered "to be pretty much admissions . . . .  It was pretty bad."

Trial counsel testified that the petitioner called him from a cell phone that she gained access to and that she called him "all the time" from this cell phone.  They talked at length about the information that was on the tape of the petitioner's statement.  Trial counsel frequently talked to the petitioner, answering her letters, which he testified numbered more in the ten to twelve range, rather than the two that petitioner claimed.  He stated that he "communicated back with her, or tried to, on what she was asking me." The petitioner called trial counsel "at least once a week with somebody's phone" and at one point called and left a phone number so trial counsel could contact her where she was incarcerated.  Trial counsel testified that "on at least one, maybe two occasions" that he called back "to some counselor's office," and he felt as though he communicated with her as well as he could.

Trial counsel and petitioner discussed a variety of individuals to whom trial counsel could speak, and trial counsel talked to "some of them."  He believed that he "talked to maybe the Stringer lady.  I am pretty sure I talked to her."  He testified that he "followed through" on "a lot" of the information that petitioner relayed to him.

Trial counsel testified that while the medical reports did not indicate that the victim received "any cuts, bruises, scarring or whatever," having "people that will testify that this happened, and you have got four against one or four against two, you know, that is pretty damning."  Trial counsel did not recall telling the petitioner that the medical reports did not make a difference but stated that a person did not have to cause any damage to penetrate someone.

Had the petitioner proceeded to trial, trial counsel stated that he would have addressed the fact that the victim had been charged with and convicted of being untruthful.  He also would have attempted to use the criminal record of the co-defendants in order to impeach their testimony.

Trial counsel spent the majority of the two days leading up to the trial date speaking with the petitioner, her co-defendant, and counsel for co-defendant.  He again explained to the petitioner that she was charged with aggravated rape and that the charged carried a range

of punishment of fifteen to twenty-five years of imprisonment for a Range I offender. When she asked why the original eight-year agreement could not be reinstated, trial counsel stated that the reason was:

> [T]hat was a ship that had sailed, I guess is as good a way of putting it. It was pretty much clear that this is your deal. If you don't take it, [the district attorney does] have the ability to supersede, which is the district attorney's right, right up to the time the jury is impaneled to do. So there is not any way we could do anything to stop the State from doing that.

He also explained that the State offered to permit the petitioner to enter an open plea for the charge of rape as a Range I offender, which would carry a sentence in the range of eight to twelve years. The petitioner seemed to understand the nature of the plea agreement, and trial counsel stated that he did not believe the petitioner "was particularly happy to be pleading to anything, but she did understand that and made the conscious choice to accept the plea." Trial counsel testified that the petitioner made the decision to plead guilty and that he had informed her of what he believed to be the nature of the case against her, the applicable law, and the advantages and disadvantages of going to trial as opposed to taking a plea deal. He believed that if the petitioner had proceeded with a trial, she likely would have been convicted and received a twenty-two to twenty-three year sentence.

On cross-examination, trial counsel testified that he believed that the petitioner was "extremely bright" and likely could "have been anything she wanted to." He stated that his prior role as a sheriff did not create a conflict of interest in his representation of the petitioner. Trial counsel had represented individuals that he arrested as an officer, and many clients considered it an advantageous representation strategy. He stated that "I've had more than one person say a person that can take the book and put you in jail, can take the book and get you out." Trial counsel stated that the petitioner had maintained her innocence throughout the proceeding but that the realization that two of her co-defendants were going to testify for the State and the nature of Ms. O'Neal's testimony likely made her realize that a best interest plea was the most successful course of action. He informed the petitioner that by taking the best interest plea she would leave the determination of her sentence entirely with the trial judge and that the judge would likely impose a sentence closer to the high end of the sentencing range.

Trial counsel explained to the petitioner that there was additional evidence against her besides the medical records of the victim. He explained that the lack of cuts or bruises did not indicate a lack of sexual activity, and he noted that he had investigated "several crimes" where there was little physical evidence but physical contact still occurred.

Trial counsel testified that he relayed to the petitioner the discussions he had with co-

counsel and the State, the negotiations between the parties, and offers that the State proposed. Particularly on the weekend before the trial, he made "three or four trips back and forth between the courthouse and the jail" talking with the State and with the petitioner. He testified that it was his practice to frequently visit clients in jail.

Trial counsel did not speak with every witness that the petitioner provided, noting that some of the witnesses were not in a position to have seen or heard anything when the offense occurred. He could not recall specifically whom he talked to because of the time span between the offense and the post-conviction hearing but agreed that he did not speak with every witness the petitioner suggested.

The post-conviction court reviewed the transcript from the sentencing hearing and found that the petitioner admitted to knowingly and voluntarily pleading guilty to one count of rape and that the petitioner had no complaints about trial counsel and was able to speak with him as much as she wanted in deciding to plead guilty. The court observed that the petitioner was not someone who "could be easily intimidated or coerced into pleading guilty if [she] didn't want to." While the petitioner may not have been happy to plead guilty, the court noted that it doubted "that anybody charged with an A felony pleading guilty to a B felony is in a real joyful position," but it appeared the petitioner voluntarily decided to plead guilty. The court found that it was not bad-faith on the part of the State to indict the petitioner for aggravated rape. The post-conviction court also noted that the petitioner did not seem to understand that she could actually receive a sentence of twenty-five years if she were to proceed to trial. While the State offered a plea of eight years, this plea was for the charge of rape, and the State superseded the indictment to charge the petitioner with aggravated rape. Had the petitioner proceeded to trial, it would have been for the offense of aggravated rape, a Class A felony that carried a sentence of fifteen to twenty-five years for a Range I offender, rather than the offense of rape. The court credited the testimony of trial counsel and the work that he did on the case, stating that the petitioner did not "have any personal knowledge of what [trial counsel] was doing" because the petitioner was in jail. The post-conviction court noted that trial counsel "probably negotiated a pretty good deal for [the petitioner] just to plead guilty to rape and spared [her] the 15 to 25." The court subsequently denied the petition for post-conviction relief.

**ANALYSIS**

The petitioner alleges that counsel was ineffective for failing to adequately convey the consequences of rejecting the State's initial eight-year plea offer, failing to adequately interview all the witnesses the petitioner proposed, and failing to procure DNA testing on a toothbrush holder alleged to have been used in the commission of the offense. The petitioner further contends that she did not "knowingly and voluntarily" enter her guilty plea, and lastly

that trial counsel's previous employment as the sheriff of Bedford County created a conflict of interest that resulted in counsel performing ineffectively.

## A. Ineffective Assistance of Counsel

In a post-conviction proceeding, the petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009); T.C.A. § 40-30-110(f) (2012). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *State v. Vaughn*, 202 S.W.3d 106, 115 (Tenn. 2006). This court may not substitute its own inferences for those drawn by the post-conviction court, as questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 455 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Therefore, this court reviews the trial court's factual findings de novo with a presumption of correctness unless the evidence preponderates against the trial court's findings. *Fields*, 40 S.W.3d at 458. The trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that "counsel's representation fell below an objective standard of reasonableness;" that is, "the services rendered or the advice given must have been below 'the range of competency demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 688; *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter* 523 S.W.2d at 936). The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216; *Goad*, 938 S.W.2d at 370.

Trial counsel testified that he informed the petitioner of the State's initial offer and that the State would supersede the indictment to charge aggravated rape if the petitioner rejected the offer. The petitioner admitted that she was aware that she received an eight-year offer and later was aware that she was facing a twenty-five year sentence if convicted on the charge of aggravated rape. The post-conviction court credited the testimony of trial counsel, implicitly finding that he informed the petitioner of the ramifications of rejecting the State's offer and resolving the factual dispute in favor of trial counsel.

The post-conviction court also credited the testimony of trial counsel that he either interviewed or ascertained the nature of the statements of the witnesses who would provide the most damaging testimony to the petitioner's case. The court found that trial counsel "did a lot of work on this case." Further, the petitioner failed to present any witnesses at the post-conviction hearing, including the prison guard who the petitioner claimed informed her that she would have been her "best witness." As a general rule, the only way a petitioner may establish that the failure to discover or interview a witness resulted in prejudice is to present this witness at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1995). Trial courts and appellate judges cannot speculate or guess "what a witness' testimony might have been if introduced by defense counsel." *Id.*

The petitioner lastly argues that trial counsel was ineffective for failing to procure DNA testing on a toothbrush holder allegedly used in the offense. In this case, the petitioner did not seek DNA testing at the post-conviction hearing, and the only proof she offered that DNA evidence would prove her innocence is her statement at the post-conviction hearing that "the medical reports clearly state that the girl wasn't raped." In order to show prejudice, the

-10-

petitioner must prove that but for trial counsel's failure to procure DNA testing on the toothbrush holder "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As this court has stated, the issue in regards to the lack of a DNA test "is whether the proof at the post-conviction hearing established that if trial counsel had in fact obtained DNA testing, the test would have established the Petitioner's innocence as he alleges." *Tommy Nunley v. State*, No. W2003-0294-CCA-R3-PC, 2006 WL 44380, at *6 (Tenn. Crim. App. Jan. 6, 2006) *perm. app. denied* (Tenn. June 26, 2006). "Normally, a petitioner would be unable to show prejudice from trial counsel's failure to obtain DNA testing, unless the petitioner could show at the post-conviction hearing what the results of the DNA testing would have been." *Id.* at *7 (Woodall, J., concurring). We conclude that the petitioner has not met her burden of demonstrating prejudice. She has offered no proof to indicate that the toothbrush holder would not contain the victim's DNA, nor did she make any showing as to what the results of the DNA testing would have been or how it would have affected her decision to accept the plea.

We conclude that the record does not preponderate against the finding that trial counsel performed effectively and that his performance did not prejudice the petitioner. Accordingly, we conclude that these issues are without merit, and the petitioner is not entitled to any relief on these claims.

**B. Guilty Plea**

The petitioner next argues that she did not knowingly and voluntarily enter her guilty plea. Specifically, she contends that trial counsel informed her that "*nolo contendere*" meant "best interest," and that she entered her best interest plea with the understanding that it was not an admission of guilt. The record does not support the petitioner's assertion.

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). In evaluating whether a guilty plea was knowingly and voluntarily entered, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A reviewing court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to

him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The record indicates that the petitioner entered her plea knowingly and intelligently. The trial court engaged in a lengthy colloquy with the petitioner in regards to her right to proceed to trial, the potential punishment she faced if she proceeded to trial, and the nature of a best interest plea. The trial court informed her that a best interest plea did not require the petitioner to admit guilt but carried the same effect as a guilty plea, and the petitioner stated that she understood the consequences of a best interest plea. The petitioner agreed that she understood the charges against her and that trial counsel had fully explained the plea agreement to her before she signed it. She affirmed that she wished the trial court to accept her plea of guilty as a best interest plea. The petitioner stated that her plea to the amended charge of rape was "[b]est interest." The trial court then clarified,"[p]lea of guilty; is that correct? Not trying to put words in your mouth. I understand it is a best interest plea. It is still a guilty plea. Is that what you want to do?" The petitioner then stated that she did wish to enter that plea and that it was her free and voluntary decision to do so.

The post-conviction court noted that, based on the tone of testimony of the petitioner, she did not seem to be someone "that could be easily intimidated or coerced into pleading guilty if [she] didn't want to." The court further found that while the petitioner may not have been "happy" to plead guilty, it appeared that her decision to do so was voluntary. We agree that the plea was knowingly and voluntarily entered. The petitioner had a lengthy discussion with the trial court about the nature of a best interest plea, and was able to hear the trial judge have the same discussion with her co-defendant, before she entered her plea. The petitioner's mistaken belief that she would proceed to trial on the charge of rape, where she could have received a maximum sentence of twelve years, does not indicate deficient performance on the part of trial counsel. Trial counsel testified that he informed the petitioner that she was charged with aggravated rape, and, during her testimony, the petitioner admitted that she knew that she could potentially receive a twenty-five year sentence if convicted. Trial counsel informed her that the State's offer was to enter an open best interest plea to the amended charge of rape, with sentencing to be left to the discretion of the trial court. The petitioner testified at the post-conviction hearing that when she agreed to enter her best interest plea to the charge of rape, she was aware that the judge would determine her sentence and that it would be within the range of eight to twelve years. Thus, we conclude that the evidence does not preponderate against a finding that the petitioner entered her plea knowingly and voluntarily. The petitioner is entitled to no relief on this claim.

**C. Conflict of Interest**

The petitioner lastly contends that trial counsel had a conflict of interest that prevented him from rendering effective assistance of counsel. Specifically, she claims that trial counsel's previous employment as the Bedford County Sheriff prejudiced trial counsel's opinion of her based on their prior interactions.

In order to succeed on a post-conviction argument of ineffective assistance of counsel the petitioner must demonstrate by a preponderance of the evidence that: (1) an actual conflict of interest existed; and (2) the conflicting interest caused trial counsel to perform adversely. *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980). An actual conflict of interest exists when an attorney is unable to exercise "independent professional judgment free of 'compromising interests and loyalties.'" *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003) (citing *State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000)). This court defines a conflict of interest "in the context of one attorney representing two or more parties with divergent interests." *State v. Tate*, 925 S.W.2d 548, 552 (Tenn. Crim. App. 1995).

There is a presumption of prejudice "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 350)). However, if a defendant does not raise an objection at trial he "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. Until the defendant meets this burden, "he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350.

The petitioner has not met the burden of demonstrating that trial counsel had an actual conflict of interest that adversely affected his performance. While trial counsel was a former sheriff of Bedford County and had prior dealings with the petitioner, the petitioner has not proved that this prior employment caused trial counsel to actively represent conflicting interests. Trial counsel testified that he had represented many people that he arrested as an officer and that many people considered it an advantage, as "a person that can take the book and put you in jail, can take the book and get you out." The fact that an attorney may be aware of prior bad acts committed by his client does not automatically create a conflict of interest. The petitioner has not provided any proof that trial counsel's former employment as a sheriff caused him to develop a prejudicial opinion of the petitioner that adversely affected his ability to represent her. The post-conviction court credited the testimony of trial counsel that he frequently communicated with the petitioner and kept her adequately informed as to the charges against her and the potential sentences they carried. The post-conviction court further found that trial counsel "probably negotiated a pretty good deal" for the petitioner, as she was able to plead guilty to rape instead of aggravated rape and avoided

a fifteen to twenty-five year potential sentence.  We conclude that the petitioner has not demonstrated that any material conflict of interest existed in this case.  Thus, the petitioner is not entitled to any relief on this claim.

## CONCLUSION

For the above listed reasons, we affirm the denial of post-conviction relief.


_____
JOHN EVERETT WILLIAMS, JUDGE